FILED ___ ENTERED
___ LOGGED ___ RECEIVED

SEP 09 2026

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY ___ DEPUTY

JST

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CASE NO.** 1:26-mj-02420-EA |
| | * | |
| **HEATHER BERKMAN,** | * | |
| | * | |
| **Defendant.** | | |

*******

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT**

I, Matthew D . Lippy, a Park Ranger with the United States National Park Service, being duly sworn, depose and state the following:

1. I am a United States Law Enforcement Park Ranger with the National Park Service ("NPS"), Department of Interior, and have served in that capacity since 2015. I am an "investigative or law enforcement officer of the United States" within the meaning of 18 U.S.C. § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for criminal violations of the United States Code.

2. I attended the Southwestern Community College Park Ranger Law Enforcement Academy Training Program during the winter of 2015. After graduating, I worked as a seasonal Law Enforcement Park Ranger at Voyageurs National Park, Yellowstone National Park, and Shenandoah National Park. In the fall of 2017, I was hired into a permanent Law Enforcement Park Ranger position at Independence National Historical Park. In the summer of 2019, I attended and graduated from the Federal Law Enforcement Training Centers (FLETC) Land Management Police Training (LMPT) program. In the summer of 2021, I transferred to Assateague Island National Seashore, where I currently serve as a Law Enforcement Park Ranger

3. As a commissioned National Park Service Law Enforcement Park Ranger, I have extensive training and experience in federal law enforcement, including the investigation of criminal offenses, conducting traffic and investigative stops, interviewing witnesses and suspects, collecting and documenting evidence, preparing investigative reports, protecting natural and cultural resources, and enforcing applicable federal and state laws and regulations within units of the National Park System. My duties also include conducting both land-based and maritime patrols in furtherance of law enforcement, resource protection, and visitor safety.

4. I am familiar with the facts and circumstances set forth below from my personal participation in the investigation and arrest of the defendant HEATHER BERKMAN; my review of the body worn camera (BWC) footage from the September 8, 2026 encounter with BERKMAN, and reports and statements of other law enforcement officers (LEOs) involved in the investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Information in this Affidavit does not always set forth my personal observations, but rather at times reflects information from reports as well as information provided to me by other law enforcement agents who observed the events described and to whom I have spoken or whose reports I have read.

5. Because I have submitted this Affidavit for the limited purpose of establishing probable cause, I have not included every detail of every aspect of the investigation. Rather, I have set forth only those facts that I believe are necessary to establish probable cause. I have not, however, excluded any information known to me that would defeat a determination of probable cause.

6. This Affidavit is submitted in support of a criminal complaint and arrest warrant

for BERKMAN, charging her with (1) assaulting, resisting, or impeding certain officers or employees in violation of 18 U.S.C. § 111(a)(1), and (2) influencing, impeding, or retaliating against a federal official by threatening or injuring a family member, in violation of 18 U.S.C. § 115(a)(1)(B).

## PROBABLE CAUSE

7. On September 8, 2026, at approximately 5:00 p.m., while on duty at Assateague Island National Seashore, I received a report from National Park Service Dispatch of a verbal dispute occurring near the kayak concession operation on Bayside Drive. Dispatch reported that a female, later identified as Heather BERKMAN, had been walking a dog off leash when the dog jumped on a toddler. BERKMAN and the toddler's parent subsequently had a verbal dispute.

8. While responding to the location of the reported dispute, I observed a blue Toyota Yaris displaying Maryland registration 2GX3454 traveling northbound on Bayberry Drive at a high rate of speed in a posted 15-mile-per-hour zone. My radar unit recorded the vehicle traveling at 47 miles per hour. I turned my patrol vehicle around and caught up to the Toyota. While doing so, I observed the Toyota cross the double-yellow centerline and pass another vehicle traveling northbound on Bayberry Drive. At approximately the same time, National Park Service Dispatch advised me that the female involved in the reported dog incident had left the scene in a blue Toyota Yaris displaying Maryland registration 2GX3454, matching the vehicle I was following. I activated my emergency lights and initiated a traffic stop.

9. Upon approaching the Toyota, I observed a dog in the rear seat and identified the driver as Heather BERKMAN via her Maryland driver's license. When I asked BERKMAN about the reported dispute involving her dog, she denied having any knowledge of the incident. BERKMAN was also unable to provide vehicle registration or proof of insurance. While speaking

with BERKMAN, I detected a strong odor of an alcoholic beverage coming from inside the vehicle and observed that BERKMAN's eyes were glassy and bloodshot. BERKMAN stated that she was in a hurry because someone was breaking into her residence; however, she was unable to provide any details regarding the alleged break-in. BERKMAN requested to leave, and I informed her that she was not free to go.

10. I returned to my patrol vehicle to conduct records checks using BERKMAN's driver's license information. While I was doing so, BERKMAN drove away from the traffic stop without warning or authorization. I pursued BERKMAN northbound on Bayberry Drive with my emergency equipment activated. BERKMAN came up behind another vehicle traveling northbound in front of her which forced her to slow. I attempted to position my patrol vehicle on the driver's side of BERKMAN's Toyota to prevent her from continuing to flee. BERKMAN then steered her vehicle toward my patrol vehicle and accelerated, causing the rear driver's side of her Toyota to strike the front passenger side of my patrol vehicle.

11. BERKMAN continued fleeing northbound on Bayberry Drive, passing additional vehicles by crossing the double-yellow centerline. BERKMAN then failed to stop at the stop sign at the intersection of Bayberry Drive and Maryland Route 611 before turning westbound onto Route 611 and leaving Assateague Island National Seashore. Due to BERKMAN's dangerous manner of driving, and because I had already positively identified her and obtained identifying information, including her address, I terminated the pursuit.

12. I notified Worcester County and Maryland State Police personnel of the fleeing vehicle and requested assistance locating and apprehending BERKMAN at her residence. When I subsequently arrived at BERKMAN's residence, a Worcester County Sheriff's Office deputy and an Ocean Pines Police Department officer had BERKMAN in custody. BERKMAN was

handcuffed behind her back and was verbally uncooperative and physically pulling away from the officers. As I contacted BERKMAN and prepared to place her into my patrol vehicle, I again detected a strong odor of an alcoholic beverage coming from her person. BERKMAN was searched and placed in the rear prisoner compartment of my patrol vehicle. Supervisory Park Ranger Andrew BRADY responded to BERKMAN's residence and assisted me.

13. I transported BERKMAN to the Maryland State Police barrack in Berlin, Maryland. During the transport, BERKMAN became increasingly agitated and began kicking at the interior of my patrol vehicle, at the window and slamming her body against the prisoner partition. At the Maryland State Police barrack, BERKMAN was provided an opportunity to submit to a breath test to determine her blood alcohol concentration. BERKMAN remained highly agitated and refused to calm down sufficiently to enter the barracks.

14. Due to BERKMAN's continued attempts to kick the interior of the patrol vehicle, Supervisory Park Ranger BRADY and I removed BERKMAN from the vehicle and applied leg restraints to prevent her from kicking and damaging the patrol vehicle and to facilitate her safe transportation. While BERKMAN was outside of the patrol vehicle and we were applying the leg restraints, I again detected a strong odor of an alcoholic beverage coming from BERKMAN's person. While we were placing BERKMAN back into the patrol vehicle, BERKMAN intentionally kneed me in the chest and thighs several times. While I was attempting to secure BERKMAN with a seat belt, BERKMAN bit my left forearm, leaving a visible mark. At the time BERKMAN assaulted me, I was acting in my official capacity as a commissioned National Park Service Law Enforcement Park Ranger and was engaged in the performance of my official duties, including maintaining custody of and transporting BERKMAN following her arrest.

15. BERKMAN was subsequently transported to Worcester County jail. During the transport, BERKMAN continued to intentionally slam and bang her body against the prisoner partition and interior of the patrol vehicle. BERKMAN made multiple threats to kill Supervisory Park Ranger BRADY and me. During one of these threats, BERKMAN stated, "I fucking swear if I see you out of here mother fucker, if you see me again in the real world I will fucking knife you I will slit your throat." BERKMAN made multiple additional death threats toward one or both of us during her detention and transport. During transport BERKMAN also intentionally urinated inside my patrol vehicle multiple times and made statements bragging about having done so.

16. Upon arrival at the Worcester County jail, BERKMAN remained physically uncooperative and required multiple correctional staff members to remove her from my patrol vehicle.

17. After BERKMAN was transferred to the custody of the Worcester County jail, I went to Tidal Health Atlantic General Hospital to receive medical treatment for the human bite injury to my left forearm. As a result of the bite, I was prescribed antibiotics to reduce the risk of infection and disease and was administered a tetanus vaccination.

**CONCLUSION**

18. Accordingly, pursuant to the facts set forth above, I submit that probable cause exists for the issuance of a criminal complaint and warrant for the arrest of **HEATHER BERKMAN** for violations of 18 U.S.C. §§ 111(a)(1), 115(a)(1)(B).

I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Respectfully submitted,

*Matthew Lippy*

Matthew D. Lippy, U.S. Park Ranger
National Park Service

Sworn to before me over the telephone and signed by me pursuant to Federal Criminal Procedure Rules 4.1 and 4(d) this 9th day of September 2026.

HONORABLE ERIN ASLAN
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MARYLAND